UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                              )
                                    )
C. Wayne McDonald,                  )    Case No. 13-10663C-7G
                                    )    Jointly Administered in
          Debtor.                   )    Case No. 13-10661
_____     )
                                    )
                                    )
Wendy C. McDonald,                  )    Case No. 13-10664C-7G
                                    )    Jointly Administered in
          Debtor.                   )    Case No. 13-10661
_____     )

MEMORANDUM OPINION

These cases are before the court for consideration of Motions for Protective Order ("Motions") filed on behalf of C. Wayne McDonald and Wendy C. McDonald, the Debtors in these chapter 7 cases ("Debtors"). Having reviewed the Motions, the responses to the Motions, the evidence offered at the hearings on the Motions, matters of record and the arguments of counsel, the court finds and concludes as follows:

(1) In the Motions, the Debtors seek protective orders with respect to subpoenas to produce documents directed to J. Calvin Cunningham, Tuggle Duggins, P.A., and Reitzel Law who are identified in the Motions as "attorneys of the movants" and are hereinafter referred to as the "Attorneys." These subpoenas were served by John A. Northen, the chapter 7 trustee in the

1

chapter 7 cases of C. Wayne McDonald and Wendy C. McDonald ("Trustee").[1]

(2) As regards the Debtors, the Trustee's subpoenas seek from the Attorneys all documents relating to any transfers of any interest in property made to or from the Debtors after May of 2009, all documents relating to any interest in property held by the Debtors between May 17, 2009, and September 5, 2013, copies of any and all emails or other written communications between the Debtors and the Attorneys relating to an interest of either debtor in property, asset protection, estate planning, or any means or method of protecting or preserving either debtor's assets from potential claims of creditors, all documents or other materials provided in connection with the preparation of the bankruptcy schedules of the Debtors and any other documents or materials relating to any interest in property of the Debtors as of September 4, 2013, or any interest in property transferred by the Debtors on or after May 17, 2009.  The Trustee seeks such documents in connection with his duties as chapter 7 trustee under section 704 of the Bankruptcy Code to locate, recover and liquidate any property interests that should be included in the bankruptcy estate.  The subpoenas to the Attorneys were accompanied by a letter from the Trustee in which the Trustee

---

[1] Mr. Northen also is the trustee in the chapter 7 cases of C&M Investments of High Point, Inc. and C. Wayne McDonald Contractor, Inc., two corporations through which Mr. McDonald conducted business prior to the filing of the chapter 7 cases.

2

purported to waive any applicable attorney-client privilege of the Debtors.

(3) The specific relief sought by the Debtors is described as orders "protecting their attorney-client privilege with respect to all communications and matters subject to that privilege in the files of [Attorneys Cunningham, Tuggle Duggins and Reitzel Law], except for those which relate exclusively to C & M Investments of High Point, Inc., and C. Wayne McDonald Contractors, Inc.[2], and which do not include any attorney-client communications regarding movants or other corporations and limited liability companies that they own and manage." The Debtors also seek protection with respect to documents which are the "work product" of the attorneys under Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Trustee disputes the applicability of the attorney-client privilege and argues alternatively that he has effectively waived any privilege applicable to the documents sought in the subpoenas. The court first will address the issues related to the existence and applicability of the attorney-client privilege in this proceeding.

(4) Under Bankruptcy Rule 9017 and Rule 501 of the Federal Rules of Evidence, privileges in federal courts, such as the

---

[2] Relying upon the decision in Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), the Trustee has waived the attorney-client privilege on behalf of the corporate debtors and such waiver is not disputed.

attorney-client privilege, are governed by the federal common law, unless State law supplies the rule of decision.  French v. Miller (In re Miller), 247 B.R. 704, 708 (Bankr. N.D. Ohio 2000).  The matter before the court arises in the context of a bankruptcy case involving the efforts of a chapter 7 trustee to carry out his duty under section 704(a)(1) to collect or recover property of the estate.  This is a federal matter not involving a claim or defense governed by State law.  Federal common law therefore is controlling.

(5)   Federal common law recognizes an attorney-client privilege.  See generally 6 James Wm. Moore et al., Moore's Federal Practice § 26.49 (3d ed. 2014).  As defined by the Fourth Circuit,

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and the privilege has been (a) claimed and (b) not waived.

In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338-39 n.3 (4th Cir. 2005)(citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)).

4

(6) The procedure for claiming a privilege is set forth in Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure which is made applicable in this matter by Bankruptcy Rule 9014(c). Under Rule 26(b)(5)(A) a party withholding information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or other tangible things not produced or disclosed—and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Under this rule, when documents are withheld, a blanket assertion of privilege will not suffice to establish the applicability of a privilege; instead, the applicable privilege must be claimed and established for each document that is withheld. 6 James Wm. Moore et al., Moore's Federal Practice § 26.90 (3d ed. 2014).

(7) Having expressly invoked the attorney-client privilege, the Debtors have the burden of showing that such privilege is applicable to each of the withheld documents. In re Grand Jury Subpoena: Under Seal, 415 F.3d at 338-39. In order to do so, the Debtors must establish each of the elements of the attorney-client privilege. United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). Deciding whether the

Debtors have carried the burden of establishing the applicability of the attorney-client privilege requires an analysis and application of the evidence that was offered by the Debtors.

(8) The only evidence submitted by the Debtors in support of their privilege claim consists of brief testimony given by the male Debtor, Mr. McDonald, at the initial hearing on June 12, 2014, and the three privilege logs that the Debtors offered into evidence at the August 20, 2014 hearing as Debtors' Exhibits 1, 2 and 3. Mr. McDonald's testimony was very general and did not refer to any particular document. Mr. McDonald testified that he had employed the Attorneys to help with "matters relating to the bankruptcy and other matters", that he had delivered documents to them and had verbal communications with the Attorneys, that no one else was present when he met with the Attorneys, and that it was his intention that "everything we did or said" would be confidential. At most, Mr. McDonald's testimony is a blanket assertion of the privilege which, standing alone, falls far short of complying with Rule 26(b)(5)(A) or establishing the applicability of the attorney-client privilege to any particular document.

(9) The remaining evidence consists of the privilege logs submitted by the Debtors at the hearing on August 20, 2014.

6

These logs consists of a separate privilege log for each of the three law firms, listing the documents that were withheld from each firm's documents.   The logs list each withheld document, with a column for providing a description of the document (such as letter, email, etc.), a column for providing the date of the document, a column for identifying the author of the document, a column for identifying the recipients of the document, a column for identifying the client or clients for each document, and a column for providing a description of the contents of each document.

(10)  The privilege logs list three types of documents: documents sent by one or both Debtors to an attorney, documents sent by an attorney or the attorney's subordinate (usually a secretary in the attorney's office) to one or both of the Debtors and documents prepared by the Attorneys that were apparently retained in the Attorneys' offices and not sent to either of the Debtors.   While the logs thus are sufficient to show that documents were exchanged between the Debtors and the Attorneys, that showing alone is not sufficient to establish that the attorney-client privilege is applicable to the documents.   To the contrary, there are various types of communications between attorney and client that are not privileged, as for example:  communications made to an attorney seeking business judgment or advice, Christman v. Brauvin Realty

Advisors, Inc., 185 F.R.D. 251, 256 (N.D. Ill. 1999); Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 444 (S.D.N.Y. 1990); communications in which an attorney conveys to the client facts acquired from other persons or sources, Brinton v. Dep't of State, 636 F.2d 600, 604 (D.C. Cir. 1980); Standard Chartered Bank v. Ayala Int'l Holdings, Inc., 111 F.R.D. 76, 80 (S.D.N.Y. 1986); and pre-existing documents furnished by the client to the attorney that could have been obtained by court process while they were in the possession of the client, Fisher v. United States, 425 U.S. 391, 403-04, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Moreover, as previously noted, there is no presumption that every communication between a client and an attorney is protected by the attorney-client privilege. See United States v. Tedder, 801 F.2d 1437, 1441 (4th Cir. 1986). What is required is that the proponent of the privilege prove each element of the attorney-client privilege as to each document. Const. Prods. Research, Inc., 73 F.3d at 473.

(11) One of the essential requirements for attorney-client communications to be encompassed by the attorney-client privilege is that the communications by the client must be "for the purpose of securing primarily either (i) an opinion on law, (ii) legal services or (iii) assistance in some legal proceeding. . . ." In re Grand Jury Subpoena: Under Seal, 415 F.3d at 338-39. Stated another way, the attorney-client

privilege "protects only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege." Fisher, 425 U.S. at 403, 96 S.Ct. at 1577. See also United States v. Corp. (In re Grand Jury Investigation), 974 F.2d 1068, 1071 (9th Cir. 1992)("The attorney-client privilege protects confidential disclosures made by a client to obtain legal advice . . . as well as an attorney's advice in response to such disclosures."); Ash v. Theros Int'l Gaming, Inc., No. 99 C 5140, 2001 WL 648632, at *3 (N.D. Ill. June 6, 2001)("[N]ot all communications between counsel and clients are subject to the attorney-client privilege. Rather, the privilege only prevents disclosure of matters communicated to lawyers, in confidence, by the clients, for the purpose of seeking legal advice.")(emphasis in original).

(12) In this case, the skimpy information in the privilege logs purporting to describe the contents of the withheld documents is in most instances insufficient to show that the documents from the Debtors were for the purpose of, and necessary for, obtaining legal advice or legal assistance or, in the case of the Attorneys, documents providing legal advice in response to requests from the Debtors for such legal advice. With respect to such documents, the privilege logs therefore do not comply with the requirement in Rule 26(b)(5)(A)(ii) that the nature of withheld documents be described in a manner that will

enable other parties and the court to assess the attorney-client claim and are insufficient to establish that the attorney-client privilege is applicable to the documents listed in the privilege logs. There are some documents, however, that contain enough of a description that an in camera review of the documents will be made to determine if the attorney-client is applicable. These documents will be identified in the following discussion regarding the privilege logs.

(13) Except as hereinafter noted, the information in the privilege logs regarding the contents of the withheld documents is so limited that it is virtually meaningless in determining the nature of the document, including whether the document was requesting or providing legal advice. The purported description of the contents of the various documents consists of entries such as "invoices", "foreclosure deed", "annual report", "operating agreement", "cover page", "signature page", "NCDENR", "gift tax return", "loan documents", "Secretary of State form", "trust info", "schedule meeting", "discuss potential investment", "conference call", "PFS", "list of addressees", "cover letter", "message", "Notes on Dates", "Release of Security", "Financial Restructuring", "Settlement Agreement", "Alpha Bankruptcy", "scheduling" and other one or two word entries that are similarly uninformative. Such vague and uninformative document descriptions do not satisfy Rule

10

26(b)(5)(A)(ii) and are insufficient to establish the applicability of the attorney-client privilege. See Const. Prods. Research, Inc., 73 F.3d at 473-74 (finding descriptions in privilege log such as "Fax Re: DOL Findings" and "Letter re: Customer Orders" "d[id] not provide enough information to support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation"); In re Gen. Instrument Corp. Secs. Litig., 190 F.R.D. 527, 530 (N.D. Ill. 2000)(characterizing entries in privilege log such as "Explanation re: Primestar Relationship" and "Filing with SEC" as "sketchy, cryptic and often mysterious descriptions" and insufficient to show the applicability of the attorney-client privilege); Christman, 185 F.R.D. at 257 (finding entries in privilege logs that described documents such as "fax cover with note" too vague to establish the attorney-client privilege). As recognized in the foregoing decisions, failure to provide an adequate privilege log is grounds for rejecting a claim of attorney-client privilege. Accord, Aurora Loan Servs., Inc. v. Posner, Posner & Assoc., 499 F.Supp.2d 475, 479 (S.D.N.Y. 2007)("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney-client privilege."); Mold Masters Ltd. v. Husky Injection Molding Sys., Ltd., No. 01 C 1576, 2001 WL 1558303, at *2-3 (N.D. Ill. Dec. 6, 2001)("If the description falls below this standard and fails to provide

sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work-product doctrine, then disclosure of the document is an appropriate sanction."). The order accompanying this opinion will identify the documents that are included in this category and will overrule and deny the Motions as to such documents.

(14) There are some documents listed in the privilege logs which are described as "work product." To the extent that these entries are intended as a claim for protection under Rule 26(b)(3), such claim will be denied. Section 26(b)(3) applies only to documents and tangible things "that are prepared in anticipation of litigation or for trial. . . ." Fed. R. Civ. P. 26(b)(3)(A). See generally, 6 James Wm. Moore et al., Moore's Federal Practice § 26.70[3][a] (3d 2014). As with the attorney-client privilege, the party asserting a claim for work product protection has the burden of establishing the elements of the doctrine. E.g., Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983). A mere allegation that the work product rule applies is not sufficient to invoke its protection. Novartis Pharm. Corp. v. Abbott Labs., 203 F.R.D. 159, 163 (D. Del. 2001). "Likewise, a party may not rely upon a blanket assertion of the rule to object to multiple discovery requests. Instead, the party asserting the rule must establish

that each objectionable request calls for production of work product." 6 James Wm. Moore et al., Moore's Federal Practice § 26.70 [5][a]. And where a party fails to meet its burden of establishing the applicability of the work product rule, the burden never shifts to the opposing party to demonstrate substantial need and undue hardship. See Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 381 (6th Cir. 2009). The Debtors' blanket assertion of "work product" with no further information is insufficient to invoke the work product rule and the Motions therefore will be denied to the extent that they seek protection under the Rule 26(b)(3).

(15) There are some documents that are described in the privilege logs as having been sent by the Attorneys to the Debtors that include a reference to providing advice, or as advising the Debtors. While the descriptions of these documents provides little other information regarding the advice referenced in the logs, these descriptions are sufficient to warrant an in camera inspection by the court to determine whether these documents fall within the attorney-client privilege. These documents will be identified in the order accompanying this opinion and the Motions will be taken under advisement as to these documents pending the in camera inspection. The documents that will be reviewed in this manner include the billing invoices listed in the Tuggle Duggins

13

privilege log.   While the attorney-client privilege typically does not extend to billing statements, such documents are protected to the extent that they "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law . . . ."   Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999)(quoting from Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)).

(16)  To the extent that any such documents are found to be privileged documents, the in camera inspection also will address whether the Trustee's attempted waiver of the Debtors' attorney-client privilege was effective.   The court's ruling on the waiver issue will be reflected in the order that will be entered following the in camera inspection.   There are conflicting decisions regarding whether a bankruptcy trustee can unilaterally waive an individual debtor's attorney-client privilege, ranging from flatly not allowing the waiver under any circumstances to holding that the trustee, as a matter of law, succeeds to the privilege and can waive the privilege at will. See In re Miller, 247 B.R. 704, 709 (Bankr. N.D. Ohio 2000). The approach adopted in Miller was the "middle of the line" approach under which "the particular circumstances of the case must be examined to determine if the bankruptcy trustee has the power to waive the debtor's attorney-client privilege over his

14

objection." Id. Accord, Secs. and Exch. Comm'n v. Marker, No. 1:02CV01109, 2006 WL 288426, at *3 (M.D.N.C. Feb. 6, 2006). This approach includes weighing the potential harm to the individual debtor against the trustee's duty to maximize the value of the debtor's estate, i.e., making a comparison of the harm to the debtor with the trustee's need for information. Id. Having weighed the conflicting decisions, the court concludes that the better approach to the waiver issue is the middle approach adopted in Miller and Marker, and that is the approach that will be utilized in this proceeding in dealing with the waiver issue.

An order in accordance with the foregoing findings and conclusions is being entered contemporaneously with the filing of this memorandum opinion.

This 3rd day of September, 2014.

William L. Stocks
United States Bankruptcy Judge